**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE**

**CITY OF PIKEVILLE,**

    **Plaintiff,**

v.

                                **Civil Action No.: 7:22-cv-00064-REW-EBA**

**CEBRIDGE ACQUISITION, LLC,
CEQUEL III COMMUNICATIONS II, LLC,
& ALTICE USA,**

    **Defendants.**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, the City of Pikeville ("Pikeville"), files this Opposition to the Motion to Dismiss ("Motion") filed by Cebridge Acquisition, LLC ("Cebridge"), Cequel III Communications II, LLC ("Cequel"), and Altice USA and states as follows:

**I.    INTRODUCTION**

This action seeks to enforce prior proceedings that occurred before the Pikeville Board of Commissioners (the "Board"), which found Defendants to be in violation of Pikeville's Ordinance # 0-2009-022 ("Ordinance") governing Defendants' franchise to provide cable television service to Pikeville residents. Specifically, on July 27, 2020, the Board conducted a public hearing pursuant to Section 10(b) of the Ordinance, to determine whether or not the Defendants had violated any of the provisions of Ordinance. After reviewing all the evidence presented, the Board found that the Defendants had violated multiple provisions of the Ordinance and assessed liquidated damages. Said liquidated damages are recoverable from the Defendants as of the date of July 27, 2020 and continue to accrue daily as long as said violations continue.

Defendants appear anxious to re-litigate their violation and the underlying process, but that ship has sailed. Defendants **agreed** that any issue related to their compliance would be determined by the Board. Defendants could have appealed the Board's decision to a court of competent jurisdiction, but failed to do so. As such, the only issue for this Court to determine is how much money Defendants need to pay until such time as Defendants can demonstrate to the Board that they are back in compliance with the Ordinance. While the attachments to the Complaint provide context for the action and are helpful in disproving Defendants' arguments concerning their alleged absence from the franchise and even the Commonwealth of Kentucky, they are not central to Plaintiff's claims. The allegations of the Complaint adequately support Plaintiff's claims and Defendants' Motion should be denied.

**II.     ARGUMENT**

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) without an evidentiary hearing, as here, Pikeville's "burden is relatively slight," and requires "only a prima facie showing that personal jurisdiction exists." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (citations omitted). In considering whether sufficient contacts exist to support jurisdiction, the court will not consider facts proffered by defendants that conflict with those offered by the plaintiff, *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989), and will construe the facts in the light most favorable to the nonmoving party. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), Pikeville's Complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted), and a motion to dismiss should only be granted "if it is beyond doubt that no set of facts

would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). The court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

  A. **Defendants Misconceive the Nature of This Action.**

Defendants treat this case as a *de novo* exploration of the reasons Defendants were in violation of the franchise agreement. *See, e.g.*, Motion at 10 n.4 (seeking to relitigate the Defendants' multiple violations of the Ordinance ). It is not. The merits have been adjudicated. The Board heard evidence, *including submissions by Defendants*, and found Defendants in egregious violation of the Defendants' franchise and the Ordinance. Complaint ¶¶ 23-29. The Ordinance provided a right to appeal the Board's decision, but Defendants elected not to appeal. Complaint ¶ 9 and Exhibit 2 (Ordinance § 29(b)(1)(F) (stating grantee's general right to appeal determinations and decisions under the Ordinance). The Ordinance provided for liquidated damages in the event of certain breaches, and the Board accordingly assessed those damages. This case cannot legally be a *de novo* consideration of Defendants' breach. It is instead a collection action for adjudicated liquidated damages that continue to accrue.

Indeed, even if Defendants had exercised their right to appeal the Board's adverse determination, they would have been limited to the administrative record. Their rights, and the scope of this action, did not somehow enlarge when Defendants waived their right to appeal. The Kentucky Constitution provides an "'inherent right of appeal' from an adverse decision of an administrative agency acting in a quasi-judicial role." *Moore v. Kentucky State Penitentiary (Corr. Cabinet)*, 789 S.W.2d 788, 790 (Ky. Ct. App. 1990) (quoting *American. Beauty Homes Corp. v.*

3

*Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Review, however, is limited to the administrative record, and "[n]o new or additional evidence would be admissible on appeal." *American. Beauty Homes*, 379 S.W.2d at 457. *Cf.* KY Const. § 115 (generally providing for at least one appeal in all civil and criminal cases, and mandating that such appeals be expeditious and inexpensive, and "generally upon the record and not by trial de novo"). Of course, this action is not Defendants' "appeal." They waived their appeal when they declined to exercise that right for over two years (and counting). *See* Complaint ¶ 27 (The Board issued the decision on July 27, 2020). While the franchise agreement did not specify a deadline for an appeal, the typical deadline for appeals is 30 days, for obvious reasons, including prompt closure of adjudications, fair notice to the parties and a reasonable expectation of repose. *See*, *e.g.*, Ky. Rev. Stat. Ann. § 65.8831 (deadline for appeals in city code enforcement cases is 30 days). There is no conceivable argument for an appeal deadline stretching beyond two years. Defendants plainly slumbered to the prejudice of Plaintiff, as those terms are used under the doctrine of laches. *See generally Cleveland Newspaper Guild, Loc. 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1153 (6th Cir. 1988) (*en banc*) ("The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'") (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). While deadlines for filing actions are almost always specified, it is instructive that the Sixth Circuit has concluded that even where a deadline is statutorily prescribed in a statute of limitations, the doctrine of laches may *still* shorten that period. *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 235 (6th Cir. 2007). *A fortiori*, the doctrine of laches may bar an appeal that has not been brought for over two years, with no indication, ever, of any intention to exercise that right.

4

**B.     Sufficient Conduct In and Directed At Kentucky Warrants This Court's Exercise of Personal Jurisdiction Over Defendants.**

At issue primarily in Defendants' challenge to personal jurisdiction is the notion that Altice USA has been some sort of remote parent corporation without meaningful connection to Kentucky. The allegations in the Complaint and Altice's deliberate targeting of Kentucky categorically belie that evasion. Altice has clearly "transacted business" in Kentucky, as that phrase is used in Kentucky's long arm statute, Ky. Rev. Stat. Ann. § 454.210. *See Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969-70 (E.D. Ky. 2017) ("Under the 'transacting any business' prong of the Kentucky long arm statute, the 'use of the word "any" ... establishes that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction'" (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014)). Indeed, Altice has literally appeared in Kentucky to advocate, and even litigate the underlying merits of this case, on behalf of its subsidiary Suddenlink and effectively presented itself *as the franchisee*.

The fact that Altice has no brick-and-mortar office or direct employees in Kentucky (Exhibit B, Decl. of Jim Campbell, Motion) is of zero consequence. Interestingly, Altice's Declarant, Jim Campbell, identifies as Altice's Vice President for State & Local Government Affairs, with responsibility for "17 states, including **Kentucky**." Altice, therefore, was hardly a remote and passive parent entity with respect to the Commonwealth of Kentucky.

In any event, the relatively recent surge in remote working and the general decline in brick-and-mortar offices may render any "physical presence" requirement for *general* jurisdiction obsolete, but no such "physical presence" is required for specific jurisdiction. *See generally Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989) (discussing distinction between general and specific jurisdiction); see also *Ford v. RDI/Caesars Riverboat*

5

*Casino, LLC,* 503 F. Supp. 2d 839, 843 (W.D. Ky. 2007) (where defendant carries on substantial business with Kentucky, general jurisdiction may be appropriate even if defendant "does not have any physical presence in the state"). This case presents a clear case of specific jurisdiction, as Pikeville's claims plainly arise out of or are related to Altice's contacts with and direct impact upon Kentucky. *See id.* at 842.

As the Complaint makes abundantly clear, Altice's "business model" of aggressive cost-cutting and profit maximization, and consequent service deterioration, led directly to the repeated (and continuing) breaches of the Pikeville franchise agreement once Altice took control of Suddenlink. *See especially* Complaint ¶¶ 11, 14-22 (detailing Altice's takeover of Suddenlink and subsequent slashing of costs, with predictable service deterioration). The Complaint specifically identifies Altice's deliberate strategy – about which it boasted – of locating areas like Pikeville without serious competitive alternatives where it can easily deploy its predatory formula of slashing costs and service and raising prices without serious repercussion. Complaint ¶¶ 15, 18.

A continuous *physical* presence in Kentucky is not necessary when a party's conduct has such a substantial consequence in Kentucky. Irrespective of Altice's presence in Kentucky, it had a substantial (arguably dispositive) role in the ensuing breaches. "Kentucky has an interest in seeing that contracts formed in this Commonwealth are carried out." *Texas Am. Bank v. Sayers*, 674 S.W.2d 36, 40 (Ky. Ct. App. 1984) (citing *Davis H. Elliott Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1181–82 (6th Cir.1975) ("Failure to honor a contractual obligation incurred in a state cannot reasonably be said to be without consequence there. The effects of such a breach of contract on the general conduct of business may not be readily quantifiable, but they are, nevertheless, real.")). It plainly follows that directly contributing to, or causing, multiple breaches in Kentucky of a contract formed and performed in Kentucky suffices to confer personal jurisdiction.

Significantly, Altice was both the originator of the business model that led directly to the breaches of the franchise agreement, *and* the sole advocate and litigator in Kentucky on behalf of its nominal subsidiary when the Board adjudicated the franchise breach. *See* Complaint ¶¶ 23-27. After Pikeville sent written notice of breach "to Altice USA (dba 'Suddenlink')" (Complaint ¶ 23), Altice not only failed to dispute the designation "Altice USA dba Suddenlink," but actively undertook the defense of the franchisee. By letter dated July 8, 2020, *on **Altice USA** stationery*, the Altice USA Senior Counsel for Government Affairs responded to Pikeville's notice of noncompliance. Complaint ¶ 24 and Exhibit 4. In that response on Altice USA stationery, Altice stated that "Altice and the City [of Pikeville] are parties to a cable television agreement," and undertook a defense of "Altice's" conduct as cable franchisee.

Altice USA thereby expressly stood in the shoes of the cable franchisee, Suddenlink, and vigorously advocated on its behalf. It can hardly now be argued that Altice USA lacks any meaningful connection to Kentucky. Indeed, by actively participating in the adjudication of the underlying merits, Altice is deemed to have consented to personal jurisdiction. *See In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) ("a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum") (citing *In re Real Estate Title and Settlement Services Antitrust Litigation*, 869 F.2d 760, 771 (3d Cir. 1989)).

By letter dated July 27, 2020, Altice USA doubled down on its participation in the administrative litigation with another letter containing procedural and other objections to remedial actions contemplated by the Pikeville. Complaint ¶ 26 and Exhibit 6. Altice expressly reserved its right to participate further in the adjudication of the claims. Significantly, in its participation and

7

advocacy, Altice USA forthrightly assumed the role of the franchisee. Again, Altice USA's appearance and active participation in the City of Pikeville's Kentucky adjudication dispositively forecloses any objection now to personal jurisdiction.

It warrants emphasis that the foregoing analysis requires neither "piercing the corporate veil," nor imputing any subsidiary's Kentucky contacts to the parent Altice. Altice's conduct all by itself establishes this Court's general and specific personal jurisdiction over Altice USA. Piercing the corporate veil analysis *might* be relevant later – for example, if it develops that Altice's subsidiaries are undercapitalized, and thus incapable of honoring their duties to pay liquidated damages or other obligations. But for now, Altice USA's own conduct, as detailed in the Complaint and attached exhibits, suffices to dispatch its Motion.

**C.      Plaintiff Plainly States a Claim Against Defendants As Their Wrongdoing Has Already Been Administratively Adjudicated.**

Defendants profess to be baffled by what they could have done wrong, which ignores the Board's adjudication of Defendants' wrongdoing over two years ago. That wrongdoing is detailed in the Complaint, and indeed, the entire Resolution setting forth in detail the Board's findings and conclusions is attached to the Complaint. *See* Complaint ¶ 28 and Exhibit 7. Defendants' failure to pay the liquidated damages, hence this action, is also specifically pleaded. Complaint ¶¶ 1, 29. Importantly, Defendants' challenge concerning inadequately pleaded facts is driven primarily by their desire to relitigate the underlying merits, which is now foreclosed to them for failure to appeal. *See supra* at 3-4.

To repeat what is plainly set forth in the Complaint's first paragraph, "This dispute concerns Suddenlink's failure to pay amounts owed for uncured and unpaid violations of Ordinance # 0-2009-022". Given this, Plaintiff clearly pleads all elements of each claim against Defendants.

8

As to Claim I: Clearly, a controversy exists with each Defendant as to payment of the amounts owed for violation of the Ordinance, and Plaintiff is an "interested person seeking" a declaration.

As to Claim II: (1) Defendants agreed the Board could determine their noncompliance with the Ordinance and impose liquidated damages, Ordinance § 10(b)(4), which the Board did, Complaint ¶¶ 27-28; (2) Defendants failed to pay those liquidated damages or comply, *id.* ¶¶ 1, 29; and (3) this damaged Plaintiff in the amount of continually accruing liquidated damages and by Defendants' continuing noncompliance. *Id.* ¶29.

As to Claim III: Defendants' failure to pay and noncompliance, as determined by the Board, breaches the franchise. Ordinance § 10(b)(4). Defendants admit that a breach of the franchise triggers the indemnity. Motion at 11. As noted above, Plaintiff has suffered losses or claims *of whatever kind* that "arise" from that breach, or even more broadly, are "alleged to have arisen". *Id.* § 7(b). Again, Defendants' ship has sailed regarding arguments underlying the Board's decision, and this is not an appeal of the Board's decision in any event. The Board assessed liquidated damages and Pikeville alleges that Defendants failed to pay them. That clearly triggers the indemnity as written and as agreed.

The notion that Plaintiff cannot rely on exhibits to state a claim (Motion at 9-10) is preposterous.[1] The Complaint details the exact sequence of events and conduct giving rise to this

---

[1] None of Defendants' cases, in their particulars, contradict this obvious observation. *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. CIV.A. 13-77 JLL, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff's Complaint contains ten (10) counts, several of which appear to be duplicative or overlapping, and none of which are properly identified."); *McKissick v. Deal*, No. 5:14-CV-72 MTT, 2014 WL 1690436, at *1 (M.D. Ga. Apr. 29, 2014) (145 pages of exhibits without any "direct allegations"); *Diaz v. Sisto*, No. CIVS070020WBSCMKP, 2008 WL 5101465, at *3 (E.D. Cal. Dec. 2, 2008) (prisoner appearing pro se and filing multiple complaints cannot simply attach exhibits to a generic complaint form); *Figueroa v. Commonwealth Fin. Sys.*, No. 22-CV-0441, 2022 WL 605443, at *3 (E.D. Pa. Mar. 1, 2022) ("a plaintiff may not state a claim by relying solely on exhibits" without any direct allegations); *DiGenova v. Unite Here Loc. 274*, 673 F. App'x 258, 259 (3d Cir. 2016) (plaintiff's amended complaint "merely cobbled together a number of documents with incoherent statements, attachments, and letters from third parties" and again failed to "set forth any discernible claim").

lawsuit – far beyond the requirements of notice pleading – and the exhibits properly corroborate general allegations with greater specificity. *See* Fed. R. Civ. P 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Of course, as nearly all of Defendants' cited cases make clear, the remedy for a Rule 8 pleading deficiency is dismissal *without* prejudice with leave to amend.

Defendants also claim that only the franchisee is bound by the contract and that Pikeville therefore fails to state a claim against any entity other than Cebridge, the nominal franchisee. But the declaratory and injunctive relief (Count I) would certainly be applicable to all three defendants. Moreover, it bears repetition that Altice **put in writing that it was a party to the franchise agreement**, stating "**Altice and the City are parties to a cable television franchise agreement** made pursuant to the Cable Ordinance, which became effective September 28, 2009." That letter defined "Altice" as both Cequel III Communications, II, LLC, d/b/a Suddenlink Communications AND Altice USA, Inc. Exhibit 4 ("I write on behalf of Cequel III Communications, II, LLC, d/b/a Suddenlink Communications, a subsidiary of Altice USA, Inc. (collectively "Altice" or the "Company")").

In that same instrument, Altice inserted itself into the Board's adjudication of the merits below not as a third-party advocate but as *the* franchisee. Indeed, *only* Altice appeared in the proceedings; no other entity appeared. And Altice consistently referred to itself as the franchisee, discussing *Altice's* compliance. It is premature to consider whether effective relief would require piercing the corporate veil, but certainly at this pleading stage, a claim has fairly been stated against Altice. As noted, *supra* at 6, Altice also had a substantial (arguably dispositive) role in the ensuing breaches.

If the Court determines now or later that the three counts, as set forth in the Complaint, are insufficient to state a claim against Altice because it is not a formal party to the franchise agreement, then Plaintiff can certainly, on the facts already pleaded, add a tortious interference with contract claim (and possibly other claims) against Altice.

Generally, of course, if this Court does determine that Plaintiff's Complaint is defective in some manner set forth by Defendants' Motion, and that defect is curable, then Plaintiff respectfully requests leave to amend, which leave should be freely given when justice requires. Fed. R. Civ. P. 15(a).

### III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

Date: October 10, 2022

Respectfully submitted,

*/s/*         *Russell H. Davis Jr.*

| | |
|---|---|
| Russell H. Davis Jr. | Franklin Scott Conway LLP |
| KBA Bar #17265 | Dennis C. Taylor |
| Pikeville City Attorney | Admitted *pro hac vice* |
| 243 Main Street | 1629 K St NW #300 |
| Pikeville, KY 41501 | Washington, DC 20006 |
| (606) 437-6276 | (202) 688-3200 |
| rdavis@bairdandbaird.com | dennis@fsc.legal |
| | |
| Linda K. Ain | Talcott Franklin P.C. |
| KBA Bar #83779 | Talcott J. Franklin |
| The Law Firm of Linda K. Ain | Admitted *pro hac vice* |
| 4205 Reserve Rd., #303 | 100 Crescent Court, 7th Floor |
| Lexington, KY 40514 | Dallas, Texas 75201 |
| (859) 806-0646 | (214) 642-9191 |
| lindaain@twc.com | tal@talcottfranklin.com |
| | |
| The Webb Law Centre, PLLC | *Counsel for Plaintiff* |
| Charles R. "Rusty" Webb | |
| Admitted *pro hac vice* | |
| 716 Lee St. E. | |
| Charleston, West Virginia 25301 | |
| (304) 344-9322 | |
| rusty@rustywebb.com | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2022, I caused to be filed the foregoing document with the Court through the Court's electronic filing system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system, including:

Shannon A. Singleton (KBA No. 88764)
Monica H. Braun (KBA No. 93058)
STOLL KEENON OGDEN PLLC
300 West Vine Street
Suite 2100
Lexington, Kentucky 40507
(859) 231-3000
AJ.Singleton@skofirm.com
Monica.Braun@skofirm.com

and

Amy Richardson (*pro hac vice* submitted)
Walter E. Anderson (*pro hac vice* submitted)
William Sullivan (*pro hac vice* submitted)
HWG LLP
1919 M Street NW
Eighth Floor
Washington, DC 20036
(202) 730-1300
arichardson@hwglaw.com
wanderson@hwglaw.com
wsullivan@hwglaw.com


/s/          Russell Davis

Counsel for Plaintiff